**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| JERRY NUTT | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00002-CHS |
| | ) | |
| | ) | |
| SONNY SMART, DAN RAWLS, and | ) | |
| SAMMY GARNER | ) | |

**REPORT AND RECOMMENDATION**

## I.      Introduction

This matter is before the Court upon Plaintiff Jerry Nutt's motion for default judgment against Defendants Sonny Smart and Dan Rawls (together, "Defendants Smart and Rawls"). [Doc. 39]. With respect to Defendant Sonny Smart, Nutt seeks judgment and damages on his claims for: (1) breach of fiduciary duty, (2) elder abuse, (3) conversion, (4) breach of contract, and (5) fraud, and he also seeks to recover attorney fees. With respect to Defendant Dan Rawls, Nutt seeks judgment and damages on his claims for (1) breach of contract and (2) fraud.[1]

The District Court has referred this motion for a report and recommendation under 28 U.S.C. § 636(b). For the reasons stated herein, it is **RECOMMENDED** that Plaintiff's Motion for Default Judgment as to Defendants Smart and Rawls be **GRANTED** and that Plaintiff be **AWARDED** damages against Defendant Smart in the amount of $222,885.81 and damages against Rawls in the amount of $54,158.86. It is further **RECOMMENDED** that Plaintiff's request for attorney fees be **DENIED** without prejudice.

---

[1] Nutt also has claims against a third Defendant, Sammy Garner. Defendant Garner has filed an answer to the complaint. Consequently, the motion for default judgment does not apply to him.

## II.    Discussion

### A.    Procedural Requirements

This Court has recognized that there are both procedural and substantive requirements for entry of a default judgment. *Hand v. Wholesale Auto Shop, LLC.*, No. 1:18-cv-27-JRG-CHS, 2018 WL 4291792, at *1-2 (E.D. Tenn. 2018). There are five procedural requirements. First, the plaintiff must properly serve the defendant with process. *Broadcast Music v. Marler*, No. 1:09-cv-193, 2009 WL3785878, at *4 (E.D. Tenn. Nov. 12, 2009) (citing *Virgin Records America, Inc. v. Bagan*, No. 08-cv-4694 (WHW), 2009 WL 2170153 (D.N.J. Jul.21, 2009)).

Second, "the plaintiff must fulfill the procedural obligations of Fed. R. Civ. P. 55. Specifically, the plaintiff must first seek entry of default by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint." *BroadcastMusic,* 2009 WL3785878 at *4, (citing *Keesh Construction, Inc. v. United States,* No. 1:02-CV-899, 2004 WL 2536840, at *1 n. 1 (S.D.Ohio Sep.28, 2004)). "Once the clerk has entered a default, the moving party may then seek entry of a default judgment." *BroadcastMusic,* 2009 WL3785878 at *4, (citing Fed. R. Civ. P. 55(b) and *Keesh Construction, Inc.*, 2004 WL 2536840, at*1 n. 1.)

Third, if the defendant has entered an appearance, then the defendant must be served with notice at least seven days before a hearing if the Court decides to hold a hearing on damages. Fed. R. Civ. P. 55(b)(2).

Fourth, the plaintiff must submit an affidavit stating that the defendant is not an infant or incompetent person. *Broadcast Music,* 2009 WL3785878, at *4; *Disney Enters. v. Farmer,* 427 F.Supp.2d 807, 815 (E.D.Tenn.2006)).

Fifth, the plaintiff must submit an affidavit stating whether the defendant is in military service, or if plaintiff is unable to determine whether the defendant is in military service, so stating.

2

Servicemembers Civil Relief Act ("SCRA") § 201(b), 50 U.S.C. § 3931; *Broadcast Music,* 2009 WL3785878, at *4; *Merrill v. Beard,* No. 5:05-cv-768, 2007 WL 461469, at *3 (N.D. Ohio Feb.7, 2007).

The complaint in this case was filed on January 3, 2020. [Doc. 1]. The summons and complaint were served on Defendants Smart and Rawls on January 10, 2020. [Docs. 25, 26.] Defendants Smart and Rawls have failed to plead or otherwise defend. The clerk of the court entered default against Defendants Smart and Rawls on March 24, 2020. [Docs. 33, 34]. Plaintiff has submitted the necessary affidavit stating that, after reasonable inquiry, counsel has determined that Defendants Smart and Rawls are not infants or incompetent persons. [*See* Doc. 42-2, Decl. of Stephen K. Knight, ¶ 2]. Attorney Stephen Knight also stated in his affidavit that he accessed the Servicemembers Civil Relief Act website, https://www.servicememberscivilreliefact.com, to verify that Defendants Smart and Rawls are not currently in military service. The verification service reports that there is no information in the Department of Defense Manpower Data Center indicating that either Rawls or Smart is currently in active duty status. [*Id.* ¶ 3.] Defendants Smart and Rawls have not, at any time, entered an appearance in this case and are thus not entitled to notice if a hearing on damages were to be set.

The Court concludes that Plaintiff has met all the procedural requirements for a default judgment.

**B.     Substantive Requirements**

The substantive requirements are that (1) the plaintiff's complaint must state a claim on which relief can be granted, and (2) the plaintiff must establish damages. *Hand*, 2018 WL 4291792, at *2. When the plaintiff's complaint fails to state a claim upon which relief can be granted, the

3

motion for default judgment should be denied. *Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997).[2]

In determining whether the complaint states a claim, the court should accept as true all well-pleaded allegations, except those relating to the amount of damages. *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010); *Long v. Morgan*, 451 F. Supp. 3d 830, 832–33 (M.D. Tenn. 2020) (quoting *In re Family Resorts of America, Inc.*, No. 91-4127, 972 F.2d 347, *4 (6th Cir. July 24, 1992) (table) ("Upon entry of default only those well-pleaded allegations relating to liability are taken as true.")).

In determining damages upon a motion for default judgment, a court has the discretion to hold an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2) (providing in relevant part that "the court may conduct hearings" [if] it "needs to determine the amount of damages….") Where the evidence submitted by the plaintiff is uncontested, as in this case, a hearing may be unnecessary. S*ee also Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) ("This provision, by its terms, allows but does not require the district court to conduct an evidentiary hearing."); *see also Broadcast Music*, 2009 WL 3785878 at * 5 ("a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages") (citing *LeFarge N. Am. Inc. v. Wells Group, Inc.*, No. 4:08-cv-95, 2009 WL 2601854, at *5 (E.D. Tenn. Aug. 24, 2009)).

---

[2] *See also In re Cook*, 342 B.R. 384, 2006 WL 908600, at *3 (B.A.P. 6th Cir. Apr. 3, 2006) (applying Fed. R. Bankr. P. 7055, which incorporates Fed. R. Civ. P. 55); *see also Parks v. Conley*, 178 F.3d 1295, 1999 WL 195740, at *2 (6th Cir. Mar. 23, 1999) (denying motion for default judgment and granting summary judgment in favor of the opposing party); *Gomba Music Inc. v. Avant*, No. 14-11767, 2016 WL 1529782 at *2 (E.D. Mich. April 15, 2016) ("[e]ven if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law") (quoting *Anderson v. Johnson*, 194 F.3d 1311 (table) (6th Cir. 1999)); *Vinton v. CG's Prep Kitchen* and Café, No. 1:09-cv-707, 2010 WL 748221, at * 1 (W.D. Mich. Mar. 2, 2010) ("A default judgment therefore cannot stand on a complaint that fails to state a claim."); *Starr v. Corley*, 662 F. Supp. 219, 220 (N.D. Ohio 1987) (denying motion for default judgment where complaint failed to state a claim).

4

### 1. The Plaintiff's Complaint

Nutt's complaint alleges an ongoing scheme by Smart and Rawls to defraud and exploit

Nutt for their own financial gain. The complaint alleges the following facts:

- On June 15, 2003, Nutt purchased the shell of a 1937 Studebaker automobile. Nutt planned to restore the Studebaker and enter it in national car shows in hopes of winning a trophy [Doc. 1, Complaint, ¶ 7]. Nutt worked to restore the Studebaker, using his own equipment and tools. Over the years, Nutt made significant investments into the restoration of the Studebaker, buying an engine, transmission, suspension, and body parts [*Id.* ¶ 8].

- In January 2015, Nutt was diagnosed with cancer [*Id.* ¶ 9]. Throughout that year, he had numerous surgeries, endured debilitating chemotherapy, suffered complications including septic shock, and spent four days in the coronary heart unit with heart failure and over a month in the hospital [*Id.*]. As he was undergoing chemotherapy, Nutt determined that he would not be able to finish the restoration of the Studebaker himself [*Id.* ¶ 10]. Nutt therefore discussed the restoration project with Sonny Smart [*Id.*].

- Smart represented that he had built race cars and that his father had built cars that had won car shows [*Id.* ¶ 11]. Smart represented that he was qualified to restore the Studebaker to show quality or higher [*Id.*]. Nutt and Smart agreed that Smart would take charge of the Studebaker restoration and professionally restore the car to show quality or higher, a level at which the car would be capable of winning trophies at national car shows such as the annual Specialty Equipment Market Association show [*Id.* ¶ 12]. In return, Nutt agreed to pay Smart's expenses and reasonable fees for work performed [*Id.* ¶ 13]. Nutt agreed to pay Smart a reasonable hourly rate and the hourly rates for any of Smart's employees for each stage of the restoration [*Id.*].

- Nutt reposed special trust and confidence in Smart to restore the Studebaker, and Smart undertook to assume responsibility for performing the agreed-upon restoration [*Id.* ¶ 14]. Nutt's trust in Smart was reinforced by Smart's representation that he had been an agent with the Federal Bureau of Investigation [*Id.*].

- Because of the parties' relationship, Nutt permitted Smart to borrow and use all of his car restoration tools and equipment, including a frame table, welders, blast cabinets, metalworking machines, and various smaller tools [*Id.* ¶ 15].

- Smart persuaded Nutt that he needed to replace the transmission, rims, ignition, cam, and other parts of the vehicle [*Id.* ¶ 16]. After Nutt paid for the parts to be replaced, Smart either kept the existing parts or sold them, and never credited Nutt's account for the parts that were replaced [*Id.*].

5

- Nutt wrote the first of many checks to Smart on August 15, 2015, in the amount of $4,547.13 [*Id.* ¶ 17]. Through October 8, 2017, Nutt had written checks to Smart totaling more than $135,000 [*Id.*].

- In 2017, Smart called Nutt and told him that he had moved to Tennessee and taken the Studebaker with him [*Id.* ¶ 18]. Smart had also taken Nutt's equipment and tools [*Id.* ¶ 18]. Nutt never gave Smart permission to take the Studebaker or the equipment and tools out of the State of Florida [*Id.* ¶ 19].

- In January of 2018, Smart told Nutt that he needed help with engine work on the Studebaker and that he was going to hire Dan Rawls, whose business was called Cleveland Performance Center [*Id.* ¶ 20]. In order to earn Nutt's trust, Smart and Rawls represented to Nutt that Rawls had been a county commissioner [*Id.*].

- In fact, Rawls was not a trustworthy individual [*Id.* ¶ 21]. Rawls had previously been charged with grand theft in Florida; he had multiple civil judgments against him; he had multiple tax liens filed against him; and he had filed for bankruptcy [*Id.*].

- At Smart's direction, Nutt began providing checks to Cleveland Performance Center on January 9, 2018 [*Id.* ¶ 22]. Nutt paid Rawls for numerous parts, including a custom grill, an air conditioning system, wiring, gauges, glass for the windows, and engine heads [*Id.*]. Through April 9, 2019, Nutt had paid Cleveland Performance Center more than $49,000 [*Id.*]. In addition to the payments to Cleveland Performance Center, Nutt paid $4,255 directly to Rawls [*Id.* ¶ 23].

- In December of 2018, Nutt met with Rawls in Tennessee [*Id.* ¶ 24]. Rawls undertook to have the interior of the Studebaker redone by a friend. Nutt later learned that Rawls' friend was Sammy Garner [*Id.*]. Rawls represented that his friend owed him a favor and would squeeze him into his schedule and complete restoration of the interior for $18,000 [*Id.* ¶ 25]. Rawls also represented that his friend would require a deposit of 80% of the cost of the work, and that he would need to promptly send him a check for $15,000 [*Id.*].

- Nutt subsequently wrote a check to Rawls in the amount of $20,015, from which Rawls represented that he would pay his friend the required $15,000 deposit for the interior work [*Id.* ¶ 26]. Garner subsequently represented to Nutt that Rawls had paid him only $5,000 of the $15,000 [*Id.* ¶ 27].

- The work that was performed on the Studebaker by the defendants and their agents and contractors was substandard and not as represented [*Id.* ¶ 28]. Also, the defendants charged Nutt for work that was not performed and expenses that were not incurred [*Id.* ¶ 29].

- Smart currently has possession of Nutt's restoration equipment and tools, and he refuses to release them to Nutt [*Id.* ¶ 30]. At the time the complaint was filed,

6

Garner had possession of the Studebaker, which Nutt owns, and he refused to release the car to Nutt [*Id.* ¶ 31].

## 2. Plaintiff's Complaint Meets the Substantive Requirements

Nutt has met the substantive requirements for entry of a default judgment. As discussed more fully below, the complaint properly states claims against Defendant Sonny Smart for breach of fiduciary duty, elder abuse, conversion, breach of contract, and fraud. Further, the complaint properly states claims against Defendant Dan Rawls for breach of contract and fraud.

### a. Breach of Fiduciary Duty Against Smart

Under Tennessee law, the elements of a breach of fiduciary duty claim are (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach. *Orlowski v. Bates*, 146 F. Supp. 3d 908, 927 (W.D. Tenn. 2015) (citing *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COAR3CV, 2010 WL 4939967 (Tenn. Ct. App. Dec. 3, 2010)). A fiduciary relationship arises whenever confidence is reposed by one party in another who exercises dominion and influence. *Orlowski*, 146 F. Supp at 927 (citing *Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp.2d 1023, 1028 (M.D. Tenn. 2005)).

The complaint alleges that that Smart took advantage of Nutt's trust and poor health to establish and abuse a relationship of trust. Smart gained Nutt's trust by representing that he had extensive car restoration experience and that he was a former FBI agent. Nutt placed the Studebaker restoration project entirely in Smart's hands, giving Smart discretion to decide what work was required and what a reasonable charge was for the work. Nutt also trusted Smart with his car restoration tools and equipment so that he could complete the restoration.

Smart breached his fiduciary duty by (1) misappropriating Nutt's Studebaker, (2) misappropriating Nutt's car restoration tools and equipment, (3) misappropriating car parts that

7

Smart purportedly replaced, (4) demanding and accepting payments to which he was not entitled, and (5) recommending Rawls as a trustworthy individual who was qualified to help restore the Studebaker.[3]

### b. Elder Abuse Against Smart

Tennessee's elder abuse statute, the Tennessee Adult Protection Act ("TAPA"), creates a cause of action for an elderly person for theft of money or property by fraud, deceit, coercion, or otherwise. Tenn. Code Ann. § 71-6-120(b). The statute defines an "elderly person" as a person 60 years old or older who has some mental or physical dysfunction. At all times relevant to this action, Nutt was an elderly person as defined by Tenn. Code Ann. § 71-6-120(b). [Complaint, ¶ 39]. Also, in 2015 Nutt was diagnosed with cancer, and the cancer and treatment of the cancer caused significant physical and mental dysfunction. [*Id.* ¶¶ 9-10]. As is described herein, Smart stole money and property from Nutt by fraud, deceit, and otherwise.

### c. Conversion Against Smart

Under Tennessee law, the elements of a conversion claim are (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Am. Bank, FSB v. Cornerstone Cnty. Bank*, 903 F. Supp. 2d 568, 578 (E.D. Tenn. 2012), aff'd, 733 F.3d 609 (6th Cir. 2013) (citing *Marks, Shell, & Maness v. Mann*, M2002-00652-COA-R3CV, 2004 WL 1434318, at *3 (Tenn. Ct. App. June 23, 2004)). In this case, the reasonable inference from the facts alleged establishes that Smart intentionally appropriated Nutt's Studebaker, his car restoration tools and equipment, and previously installed car parts in defiance of Nutt's rights.

---

[3] Nutt suffered monetary damages as a result of the various acts of wrongdoing committed by Defendants Smart and Rawls. Such damages will be detailed below.

#### d. Breach of Contract Against Smart

The undisputed evidence establishes that the agreement between Nutt and Smart met the essential elements for formation of a contract: offer, acceptance, and consideration. *See, e.g., Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526, 528 (Tenn. Ct. App. 1981). Nutt and Smart entered into a contract whereby Smart agreed to take charge of the Studebaker restoration and professionally restore Nutt's car to show quality or higher, and Nutt agreed to pay Smart's expenses and reasonable fees for work performed. Smart breached his obligations, including the covenant of good faith and fair dealing, by failing to restore the Studebaker to the agreed standard, by managing the car restoration project for his own benefit rather than Nutt's, by overcharging for expenses and fees, by misrepresenting work performed and expenses incurred, by recommending unnecessary work, and by other misconduct.

#### e. Fraud Against Smart

Nutt's fraud claim against Smart is rooted in a nondisclosure claim. Under Tennessee law, it is fraud when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies on the resulting misrepresentation, thereby suffering injury. *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998) (citing *Simmons v. Evans*, 185 Tenn. 282, 285, 206 S.W.2d 295, 296 (Tenn. 1947) and *Justice v. Anderson County*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997)). A duty to disclose arises where one party has reposed trust in the other, or where material facts are known to one party that are not reasonably discoverable by the other. *Justice*, 955 S.W.2d at 616-17.

The undisputed evidence is that Smart recommended Rawls as a trustworthy individual suitable to assist with the Studebaker restoration without disclosing Rawls' criminal history, history of civil judgments against him, history of tax liens, and bankruptcy history. Smart had a

9

duty to disclose these facts because Nutt had reposed trust in him, and because the facts were known to Smart and not reasonably discoverable by Nutt.

### f. Breach of Contract Against Rawls

The undisputed evidence establishes that Nutt and Rawls entered into an agreement whereby Rawls agreed to take charge of the restoration of the Studebaker's interior. Nutt paid Rawls for restoration work on the vehicle, but, to Nutt's knowledge, no such work was performed, and Nutt has never realized any benefit from any interior restoration work that may have occurred.

### g. Fraud Against Rawls

The undisclosed facts concerning Rawls' criminal history and financial transgressions were material given the degree of trust inherent in the proposed agreement for Rawls to take responsibility for restoring the Studebaker's interior, using his own discretion to determine what work was necessary and reasonable. This information was not reasonably discoverable to Plaintiff. Rawls therefore had a duty to disclose these facts. His failure to disclose them is fraud under Tennessee law. *See Justice*, 955 S.W.2d at 616-17.

### C. Damages

Nutt seeks two categories of damages. First, he seeks to recover the value of personal property misappropriated by Smart, including the Studebaker itself and the tools and equipment. Second, he seeks to recover payments made to Smart and Rawls. Because the declaration and exhibits filed by Nutt in support of his damages claims are uncontested, the Court finds it unnecessary to hold an evidentiary hearing. *See Hand*, 2018 WL 4291792, at *3.

In Tennessee, a party who tortiously harms another is liable for all damages proximately caused by the tortious conduct. *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn. 1987). The loss of the

personal property, and the loss of the money paid to Smart and Rawls were proximately caused by the tortious conduct at issue.

Specifically, a party liable for breach of fiduciary duty may be required to disgorge any benefit received. *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003). In this case, that would include the value of the misappropriated property and the payments.

The ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest. *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988) (citing 89 C.J.S., Trover and Conversion § 163, 642). The owner of property is competent to testify to its value. *Stinson v. Stinson*, 161 S.W.3d 438, 446 (Tenn. Ct. App. 2004). In this case, conversion damages would be the value of the property misappropriated by Smart.

The measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing the party in the same position it would have been in had the fraud not occurred. *Harrogate Corp. v. Sys. Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995) (citing *Youngblood v. Wall*, 815 S.W.2d 512, 518 (Tenn. Ct. App. 1991)). In this case, fraud damages would include the value of the misappropriated personal property and the payments.

The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position it would have occupied if the contract had been performed. *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990) (citing *Action Ads Inc. v. William B. Tanner Co. Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979)). In the case of a services contract where a plaintiff has received no value, the measure of damages is generally the cost of having the services provided. *See Wilhite.* 798 S.W.2d at 775. In this case,

the only evidence of the market cost of the services that Smart and Rawls contracted to provide is their agreements with Nutt. This evidence indicates that the cost of replacement services is the amount Nutt paid. *Id.* Further, damages can include any loss caused by the breach. *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001) (citing Restatement (Second) of Contracts § 347 (1979)). The payments Nutt made to Smart and Rawls, for which he received no benefit, constitute damages caused by the contract breaches.

The Tennessee Adult Protective Act (TAPA), Tenn. Code Ann. § 71-6-120(b), provides for the recovery of "compensatory damages." Compensatory damages are those that "will compensate the injured party for the injury sustained." *Gifford v. Premier Mfg. Corp.*, No. 18, 1989 WL 85752, at *6 (Tenn. Ct. App.) (quoting Black's Law Dictionary 352 (5th ed. 1979)). In this case, those injuries would include the value of the misappropriated property and the payments.

The amounts of Nutt's damages are established by Nutt's undisputed declaration and the exhibits thereto. [Doc. 39-1]. The value of the Studebaker at the time Smart took charge of its restoration was $60,000. [Doc. 39-1, Declaration of Jerry Nutt, ¶25]. The value of the tools and equipment misappropriated by Smart are as follows:

- Millermatic MIG Welder $2,205.00;

- Abrasive blast cabinet with vacuum $1,300;

- Sheet metal stock $750;

- Sheet Metal Brake with stand $5,895;

- Assorted Metal working and hand tools $3,000;

- Air compressor with large capacity tank and fittings $1,200;

- Spectrum 875 Auto-Line Plasma Cutter with XT60M Long-Body Torch with 25-ft. Cable $3,405.00;

- LT1 Chevrolet Heads $2,000;

- 4 Center Line Wheels Auto Drag Rims $2,200;

- Tremec Transmission TKO 600 5-Speed 26-Spline With .64 Overdrive $2,999;

- Aileigh Industrial Slip Roll, 16 ga., 50" $494;

- Frame table $1,300;

- Engine hoist $308;

[*Id.* at ¶26]. The total value of the tools and equipment is $27,056. The payments to Smart for the Studebaker restoration total $135,829.81. [*Id.* at ¶27; Exhibit B to Nutt Declaration]. The payments made to Rawls and at Rawls' direction total $54,158.86. [*Id.* at ¶¶28-30; Exhibits C, D, and E to Nutt Declaration].

Based on the applicable law and the undisputed evidence in the record, Nutt is entitled to recover from Smart damages in the amount of $222,855.81, and to recover from Rawls damages in the amount of $54,158.86.

### D. Attorney Fees and Costs

Under TAPA, Nutt is entitled to recover reasonable expenses, including attorney fees, if intentional or fraudulent conduct is proven by clear and convincing evidence. *See* Tenn. Code Ann. § 71-6-120(d). Intentional and fraudulent conduct is inherent in the claims established against Smart, as discussed above, and a default judgment establishes that the clear and convincing evidence standard has been met. *Stooksbury v. Ross*, 2012 WL 1946001, at *3 (E.D. Tenn. May 30, 2012), *aff'd*, 528 F. App'x 547 (6th Cir. 2013)). Nutt is therefore entitled to an award against Smart for attorney fees and expenses reasonably incurred in this lawsuit under TAPA.

Nutt's counsel has submitted a declaration and invoices supporting Nutt's request for reasonable attorney fees and expenses. In total, Nutt seeks $58,414.00 in attorney fees and $2,272.96 in expenses. The invoices do not, however, appear to excise time which is not

attributable to the TAPA claim brought against Defendant Smart. Undoubtedly much of the work performed in this case is applicable to all Defendants and all causes of action, including TAPA. However, to the extent that counsel billed time for work related to Defendants Rawls and/or Garner only, Plaintiff would not be entitled to attorney fees for that time under TAPA. Similarly, Plaintiff cannot recover fees for work performed on the other causes of action if that work cannot also be fairly attributable to the TAPA claim. *See e.g. State Auto. Ins. Co. v. Jones Stone Co., Inc.*, No. M2009-00049-COA-R3-CV, 2009 WL 4841080 (Tenn. Ct. App. Dec. 15, 2009). In *Jones Stone*, an insurance company sought a declaratory judgment that it did not owe the insured coverage under a policy it had issued to the insured. The insured countersued under the Tennessee Consumer Protection Act ("TCPA") for bad faith refusal to provide coverage. The insured prevailed on both issues and sought attorney fees under the TCPA. In reviewing the award of attorney fees, the court held, "[t]he TCPA claim was discrete and severable from the coverage claim and time spent related to the coverage issue should be disregarded in the court's determination of a reasonable fee pursuant to the TCPA." *Id.* at *11. To the extent work performed on claims other than the TAPA claim is distinct and severable from work performed on the TAPA claim, this work should be excised from Plaintiff's request for attorney fees.

## III. Conclusion

For the reasons stated herein, it is hereby **RECOMMENDED** that Plaintiff's Motion for Default Judgment be **GRANTED** in part and **DENIED** in part and that

1. Judgment be entered in favor of Plaintiff Jerry Nutt against Defendant Sonny Smart and that Nutt be **AWARDED** damages in the amount of $222,855.81 against Smart;

2. Judgment be entered in favor of Plaintiff Jerry Nutt against Defendant Dan Rawls and that Nutt be **AWARDED** damages in the amount of $54,158.86 against Rawls;

3. Post-judgment interest be awarded under 28 U.S.C. § 1961(a); and

4. Plaintiff's request for attorney fees under the Tennessee Adult Protection Act, Tenn. Code Ann. § 71-6-120(d), be **DENIED** without prejudice and that Plaintiff be given 30 days from entry of the order resolving this Motion for Default Judgment to file a motion for attorney fees and expenses consistent with this report and recommendation and Tennessee Rule of Professional Conduct 1.5.[4]

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

15